Reversed and Remanded and Majority and Dissenting Opinions filed July
26, 2005









Reversed
and Remanded and Majority and Dissenting Opinions filed July 26, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01442-CV

____________

 

AFUAH BOATENG, JOHNELL
SANDERS FERNANDEZ, 

SHARON LONG GAY, JOEL S. HOCHMAN, ROSALIND HULL, 

GLORIA ANN TUCKER, AND MISSY L. WALKER, Appellants

 

V.

 

TRAILBLAZER HEALTH
ENTERPRISES, L.L.C. AND 

UNITED STATES OF AMERICA, Appellees

_________________________________________________________

 

On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 03-49088

_________________________________________________________

 

M A J O R I T Y   O P I N I O N








At issue in this case is the propriety of the
trial court=s granting of a bill of review
and dismissal of the underlying case for lack of jurisdiction at the
preliminary hearing stage of the bill-of-review proceeding.  Appellants, a group of judgment creditors,
filed a garnishment suit and obtained a default judgment against a privately
owned Texas limited liability company. 
Though not apparent from the face of the garnishment judgment, the
garnishee is a fiscal intermediary of the federal government with respect to
certain Medicare funds in its possession. 
More than a year after the garnishment judgment was signed, the United
States and the garnishee sought a bill of review, asserting sovereign immunity.  The trial court held a preliminary hearing
under Baker v. Goldsmith, 582 S.W.2d 404 (Tex. 1979), to determine
whether the United States and the garnishee had presented prima facie proof of
a meritorious defense.  After completing
the preliminary hearing and taking the matter under consideration, the trial
court, without notice, summarily granted the bill of review, declared the
garnishment judgment void based on sovereign immunity, and dismissed the
underlying garnishment action for lack of jurisdiction.  We reverse and remand.  

I.  Factual and Procedural Background

On December 21, 2001, appellants Afuah Boateng,
Johnell Sanders Fernandez, Sharon Long Gay, Joel S. Hochman, Rosalind Hull,
Gloria Ann Tucker, and Missy L. Walker (collectively the ABoateng
Parties@)
obtained a judgment in the amount of $838,466.63 against Rosa Alsobrooks and
three of her entities, J&L Community Center, Inc., Houston Southwest Health
Services, Inc., and Houston Northeast Health Services, Inc., (collectively the AAlsobrooks
Entities@) for
failure to pay wages and independent contractor fees.  Realizing that Alsobrooks and the Alsobrooks
Entities could not pay the judgment, on that same day, the Boateng Parties, as
judgment creditors, filed a garnishment action against appellee TrailBlazer
Health Enterprise, L.L.C. (ATrailBlazer@), alleging
that it Ais
indebted or has in hand effects belonging to one or more of the above described
Defendant debtors or the parties named above.@  On December 21, 2001, the Boateng Parties
also sent a fax to TrailBlazer stating that they had filed a garnishment action
against TrailBlazer.








The garnishee, TrailBlazer, is a privately owned
limited liability company that serves as a fiscal intermediary for the Medicare
program.  In the simplest terms, a fiscal
intermediary acts as a conduit between the government and Medicare providers by
determining the amounts to be paid on Medicare claims and disbursing funds
provided by the government.  Although the
Secretary of the United States Department of Health and Human Services (AHHS@) is
officially charged with the administration of the Medicare Act, the Secretary
delegates that task to the Centers for Medicare and Medicaid Services (ACMS@).  Marsaw v. Trailblazer Health Enters.,
L.L.C., 192 F. Supp. 2d 737, 740 (S.D. Tex. 2002).  The Secretary authorizes CMS to contract with
private insurance companies to act as fiscal intermediaries or Acarriers@ by
administering certain Medicare reimbursements. 
Id. (citing 42 C.F.R. ' 421.5); see
also Matranga v. Travelers Ins. Co., 563 F.2d 677 (5th Cir. 1977).  CMS contracted with TrailBlazer to administer
the Medicare program.  At the time of the
garnishment, the United States was TrailBlazer=s primary
customer and most of the funds TrailBlazer handled were Medicare funds.  According to the record, however, TrailBlazer also maintained
bank accounts containing other funds and held assets owned exclusively by
TrailBlazer.

The Alsobrooks Entities, as Medicare providers,
regularly presented claims and sought remuneration from TrailBlazer, which
processed those claims for payment. 
Believing that TrailBlazer owed the Alsobrooks Entities funds or had
other effects belonging to them in its possession, the Boateng Parties, as
judgment creditors, sought to garnish funds owed by TrailBlazer, together with
any effects in TrailBlazer=s
possession belonging to Alsobrooks or the Alsobrooks Entities. 

TrailBlazer=s Failure
to Answer the Writ of Garnishment








TrailBlazer was formally served with process in
the garnishment action on January 7, 2002, and its answer date was January 28,
2002.  Nonetheless, TrailBlazer did not
file an answer to the garnishment action nor did it file any motions with the
trial court in response to the writ of garnishment.  Instead, TrailBlazer forwarded the
garnishment papers to Kendall Walker, Assistant General Counsel at Blue Cross
and Blue Shield of South Carolina, TrailBlazer=s parent
corporation.  Because of TrailBlazer=s status
as a fiscal intermediary with respect to Medicare funds, Walker, in turn,
forwarded the garnishment application to Mark Forcier, Assistant Regional
Counsel in the Office of the General Counsel of the HHS.  Walker informed the Boateng Parties= counsel,
Harry Herzog, that he had referred the matter to the United States, and that
the United States would be providing TrailBlazer=s
defense.  The United States, however, did
not file an answer to the garnishment action nor did it file any motions with the
trial court in response to the garnishment suit.

In late January 2002, Forcier spoke to
Herzog.  According to Forcier, Herzog
informed him that his clients, the Boateng Parties, as garnishors, were seeking
all receivables that would normally flow from Medicare to Alsobrooks or to the
Alsobrooks Entities, the judgment debtors. 
Forcier shared with Herzog his belief that garnishment was not the
correct method by which to obtain Medicare receivables from a Medicare contractor
such as TrailBlazer.  Forcier described
the process, statutes, and regulations that he deemed applicable and
appropriate and explained that the United States was the real party in interest
in any action involving the administration of the Medicare program.  On that same day, Forcier sent an e-mail to
Herzog, stating that not only had no money been going to the Alsobrooks
Entities Afor some time,@ but that
the Alsobrooks Entities owed CMS in excess of three million dollars for
overpayments.  The e-mail also stated
there was an ongoing investigation regarding the extent of possible fraud in
prior claims that led to the Ahuge
overpayment.@ 
Forcier made no mention of any non-Medicare funds, administrative
monies, or effects of Alsobrooks or the Alsobrooks Entities that might be in
TrailBlazer=s possession.

In the trial court below, Forcier and Herzog proffered
different accounts of what transpired as a result of their dialogue about the
garnishment action.  Forcier understood
that the Boateng Parties would use the process set forth in federal regulations
rather than the writ of garnishment. 
Herzog disputes this account and emphasizes that even if Forcier=s advice
as to the proper procedure to seek Medicare payments were correct, the Boateng
Parties were also seeking to obtain other funds and effects in the garnishment action,
including administrative funds that allegedly were not payments from
Medicare.  








Default Judgment Against
TrailBlazer

Neither TrailBlazer nor anyone acting or
purporting to act on its behalf moved to dismiss or dissolve the garnishment
action, obtained any written agreement concerning filing an answer to the suit,
or took any other action vis-à-vis the garnishment proceeding.  In late June 2002, the Boateng Parties moved
for a default judgment against TrailBlazer, and in mid-July 2002, the trial
court granted the default judgment. 

The default judgment against TrailBlazer makes no
mention of TrailBlazer=s status
as a Medicare fiscal intermediary or that the United States is a real party in
interest.  The judgment does not mention
the United States at all.  Instead, the
judgment merely sets forth the amounts the Boateng Parties are entitled to
recover from TrailBlazer.  

After their discussion in late January 2002,
Forcier and Herzog had no further communication until October 2002, when
Forcier, who apparently was not aware that a default judgment had been taken
against TrailBlazer, attempted to contact Herzog about the dismissal of the
garnishment action.  Herzog responded to
Forcier that it was Anever
[his] intent, understanding, or agreement@ that the
garnishment action would be dismissed. 
During October and November 2002, Forcier and Herzog communicated
several more times concerning TrailBlazer=s status
as a Medicare fiscal intermediary, the United States=s status
as the purported real party in interest in the garnishment action, and the
application of sovereign immunity as an alleged bar to the Boateng Parties=
action.  Herzog, however, made no mention
of the default judgment to Forcier or to anyone at TrailBlazer, and, again,
neither Forcier nor anyone else acting for TrailBlazer or the United States
took any action in the garnishment proceeding.

In early August 2003, an attempt was made to
execute on TrailBlazer=s
property to satisfy the Boateng Parties= judgment
against TrailBlazer.  According to
TrailBlazer, this was the first time that either TrailBlazer or the United
States learned that a default judgment had been entered against TrailBlazer
based on its failure to answer in the garnishment action. 








The Bill-of-Review Proceeding

About three weeks after learning of the default
judgment, the United States, identifying itself as the real party in interest
and on behalf of TrailBlazer, filed a petition for bill of review alleging the
following, among other things:

!         Because TrailBlazer is a Medicare carrier administering
funds for the Medicare program, the United States was a real party in interest
in the garnishment action, and the district court had no subject matter
jurisdiction to render that judgment under the doctrine of sovereign immunity.

!         Despite having had conversations with lawyers acting on
behalf of both TrailBlazer and the United States and despite having contact
information for these lawyers, the Boateng Parties= counsel filed a motion
for default judgment and obtained a default judgment in the garnishment action
without giving any notice to TrailBlazer or the United States.

!         TrailBlazer and the United States had no knowledge of the
existence of the default judgment until August 6, 2003, when a constable
arrived at TrailBlazer=s office seeking to
execute upon some of TrailBlazer=s property to satisfy the
default judgment.

!         The trial court should grant a bill of review to vacate the
default judgment as void for lack of subject matter jurisdiction based on
sovereign immunity.

!         The default judgment is void and subject to collateral
attack.

!         The trial court should set aside the default judgment under
traditional bill-of-review standards. 

!         The
trial court should grant a temporary and then a permanent injunction against
the Boateng Parties precluding them from executing upon the default judgment. 

Within
a week, TrailBlazer filed a plea in intervention substantially similar to the
United States=s petition for bill of review and
containing all of the allegations listed above.[1]








On October 8, 2003, the trial court issued a
docket control order with an April 5, 2004 trial setting.  The next day, the trial court signed an order
setting a preliminary bill-of-review hearing for November 3, 2003, for the
stated purpose of determining whether the bill-of-review case would proceed to
trial.  Both the United States and
TrailBlazer filed motions for summary judgment, and TrailBlazer sent out a
notice of oral hearing on its motion for the same time as the preliminary
hearing.  On October 30, 2003, the trial
court sent a letter to all parties stating that the bill-of-review preliminary
hearing and the hearing on TrailBlazer=s motion
for summary judgment had been rescheduled to November 5, 2003.  On that date, however, the trial court
commenced the hearing and stated that the hearing was not a hearing on
TrailBlazer=s motion for summary judgment and
that it was not a temporary-injunction hearing. 
At the beginning of the November 5, 2003 hearing, the trial court noted
that it was conducting a preliminary hearing. 
The trial court indicated that the hearing was for the sole purpose of
determining whether the United States and TrailBlazer C the
bill-of-review plaintiffs (hereinafter Aplaintiffs@) C could
present prima facie proof of a meritorious defense.  








After hearing some evidence, the court continued
the preliminary hearing over to November 17, 2003.  After the parties reconvened for the hearing
and finished presenting evidence and after hearing argument from counsel, the
trial court stated that the plaintiffs had shown a meritorious defense.  The trial court further stated that, because
TrailBlazer and the United States intentionally failed to answer the
application for writ of garnishment after being properly served, these
plaintiffs could not satisfy the other elements for a direct attack of a
judgment by bill of review.  The trial
court then indicated that, if it decided that the default judgment was void for
lack of subject matter jurisdiction under the doctrine of sovereign immunity,
then it was thinking of granting the petitions for bill of review and setting
aside the default judgment as being void, without any further procedure.  Counsel for the Boateng Parties stated that
taking such action would not be procedurally appropriate, noting that the proper
procedure for disposition on the merits would be for the court to have a
hearing on cross-motions for summary judgment after the Boateng Parties filed
their motion for summary judgment.  

The day after the hearing ended, the trial court
signed an order that contains the following recitations and rulings:

!         The trial court held a hearing on November 5 and November
17, 2003, on the merits of the petitions for bill of review.

!         The trial court has determined that TrailBlazer=s sovereign immunity
extends to the administrative funds the Boateng Parties seek to garnish.

!         The trial court grants the petitions for bill of review,
sets aside the default judgment in the garnishment action, and grants a new
trial.

!         The trial court finds that the default judgment is void for
lack of jurisdiction.  No new trial is
needed and the garnishment action is dismissed for lack of jurisdiction.

!         All
other relief requested is denied and the order disposes of all parties and all
claims.

The
trial court did not grant the plaintiffs= motions
for summary judgment.

                                                        II. 
Issue Presented

The Boateng Parties present the following issue
for appellate review:

After properly conducting
a preliminary evidentiary hearing solely to determine if the plaintiffs would
be allowed to proceed with their case, by then suddenly rendering a final
judgment for the plaintiffs on the merits[,] the trial court violated the fundamental
principles of procedural due process of law and Texas Rule of Civil Procedure
245.[2]









The Boateng Parties assert the trial court erred
when, following a preliminary hearing 
for the sole purpose of determining whether the plaintiffs had presented
prima facie proof of a meritorious defense, the trial court, without notice,
rendered a final judgment on the merits of the petitions for bill of
review.  Although it is evident that the
Boateng Parties disagree with the trial court=s ruling
on the merits of the petitions for bill of review, on appeal, they do not
assert error based on the merits of the trial court=s ruling,
and they do not seek a rendition of judgment in their favor.  Rather, they assert procedural error and seek
reversal and remand so that proper procedures may be followed.  The Boateng Parties assert that the trial
court=s
procedural error is not subject to a harm analysis; however, in the alternative
and out of an abundance of caution, they brief issues relating to a harm
analysis of this procedural error. 
Although these issues involve the merits of the trial court=s ruling,
TrailBlazer briefs these issues only as alternative arguments regarding the
harm analysis, if this court were to determine that it needs to perform a harm
analysis.

III.  Analysis

A bill of review is an
independent, equitable action brought by a party to a previous action seeking
to set aside a judgment which is no longer appealable or subject to a motion
for new trial.  Baker v. Goldsmith,
582 S.W.2d 404, 406 (Tex. 1979).  In a
bill-of-review proceeding involving a direct attack not based on lack of
service of process of the petition in the prior case, the bill-of-review
procedure is ordinarily a two-step process:

(1)       First, the trial court makes a determination, often based on a
preliminary hearing, as to whether the bill-of-review plaintiff has presented
prima facie proof of a meritorious defense. This requirement is satisfied if
the court determines that the alleged meritorious defense is not barred as a
matter of law and that the bill-of-review plaintiff will be entitled to
judgment on retrial if no evidence to the contrary is offered. If not, then the
trial court should dismiss the petition for bill of review.

(2)       Second, if the plaintiff has presented such proof, then the
trial court may proceed with discovery and trial regarding the merits of the
bill-of-review petition. 








See Baker, 582 S.W.2d at 408B09
(outlining two-step process); Ortmann v. Ortmann, 999 S.W.2d 85, 87B88 (Tex.
App.CHouston
[14th Dist.] 1999, pet. denied) (holding that in a bill-of-review proceeding,
while Baker requires a pretrial determination that the petitioner has
presented prima facie proof of a meritorious defense, this does not prevent the
trial court from granting summary judgment in favor of the bill-of-review
defendants without holding a separate hearing to determine whether plaintiff
has presented prima facie proof of a meritorious defense).  

A.        What type of hearing did
the trial court hold?








The Boateng Parties allege that, at the time the
trial court granted the bill of review, the case was not in a procedural
posture to be resolved on the merits, and for this reason, the case should be
reversed.  To rule on this contention, we
first must determine the nature of the hearing that the trial court noticed and
conducted on November 5 and 17, 2003.  In
the trial court=s final
judgment, it stated that it held this hearing to determine the merits of the
case C whether
bill-of-review relief should be granted. 
After reviewing the record, we conclude that this characterization is
inaccurate.  The day after it gave notice
to the parties that the deadline to change the pleadings was January 6, 2004,
and that trial was set for April 5, 2004, the trial court signed an order
setting the hearing in question and stating that it would be Aa Bill of
Review hearing . . . at which time the court will determine whether this case
will proceed to trial.@  This order gives notice to the parties of a Baker
v. Goldsmith preliminary hearing (hereinafter ABaker hearing@) rather
than a trial on the merits of the petitions for bill of review.  See Baker, 582 S.W.2d at 408B09.  After the trial court signed this order,
TrailBlazer noticed its motion for summary judgment for hearing at the same
time.  In a subsequent letter, the trial
court stated that this hearing had been rescheduled to November 5, but it did
not indicate any change in the nature of the hearing.  The trial court did state in the letter that
it would hear TrailBlazer=s AMotion
for Partial Summary Judgment@ on
November 5.  Although TrailBlazer=s motion
for summary judgment sought full relief on its petition for bill of review and
did not have the word Apartial@ in its
title, the trial court was apparently referring to the fact that even if it
granted TrailBlazer=s motion,
the United States=s petition
for review would remain.[3]  There is no indication in the record that the
United States ever set its motion for summary judgment for hearing on November
5.  

On appeal, TrailBlazer admits that the hearing in
question was not a summary-judgment hearing, and any confusion as to whether
TrailBlazer=s motion for summary judgment was
being heard on November 5 was dispelled by the trial court near the beginning
of the hearing:

[counsel for TrailBlazer]:     . . . I=ve got a notebook for Your
Honor of all of the cases that I cited in the summary judgment and C

[trial court]:                           You are C okay. I=m not hearing a summary
judgment. I=m here on an oral hearing.

. . .

[counsel for TrailBlazer]:     . . . he didn=t respond to our motion
for summary judgment.  There=s no response on file to
it.

[trial court]:                           Well,
I don=t really
care because I=m not hearing a summary judgment.








The trial court started the hearing by stating
that Awe are
here for a hearing on the bill of review and normally the plaintiffs would be
expected to make a showing of bill of review requirements, although they have
pled that they don=t have to
because the order complained of is absolutely void.  So either I expect you to show me that it=s void or
to show me the requirements that you need to show under bill of review procedure
. . . .@  Though the trial court=s
statement in this regard may be somewhat ambiguous and arguably could be viewed
as a statement of intent to inquire into the merits of the bill-of-review
petitions, this statement is also consistent with a Baker hearing at
which the trial court intended to determine if the plaintiffs could present
prima facie proof of a meritorious defense C the
alleged lack of subject matter jurisdiction in the garnishment action based on
alleged sovereign immunity.             Shortly after this initial statement,
the trial court more clearly indicated that it was conducting a Baker
hearing, stating that Awhat I=m looking
for is for them [the plaintiffs] to show that they get to trial. . . . So, I
mean, we may do something else after they show that.  We may have a summary judgment.  We may have a temporary injunction hearing or
whatever but right now, all I want to do is see if they go forward or if I
dismiss it right now.@  After some discussion with counsel and just
before it began to hear evidence, the trial court stated, Ait=s time
for that proof we were talking about.@   

During the hearing, the trial court heard evidence
concerning potential meritorious defenses, such as TrailBlazer=s
proffered sovereign-immunity defense and its defense that it allegedly was not
indebted to any of the judgment debtors named in the garnishment application at
the time it was served in the garnishment action.  After offering evidence on behalf of the
Boateng Parties, their counsel stated, AYour
Honor, you have all the evidence I want to present to you for purposes of this
preliminary hearing and my seven clients rest,@ to which
the trial court responded, AOkay.@ 








At the end of the hearing, the trial court stated
that the bill-of-review plaintiffs had shown a meritorious defense.  The trial court further stated that, because
TrailBlazer and the United States intentionally failed to answer the application
for writ of garnishment after being properly served, these plaintiffs could not
satisfy the other elements for a direct attack of a judgment by bill of
review.  The trial court then indicated
that, if it decided that the default judgment was void for lack of subject
matter jurisdiction under the doctrine of sovereign immunity, it was thinking
of granting the petitions for bill of review and setting aside the default
judgment as being void, without any further procedure.  Counsel for the Boateng Parties stated that
any such action would not be procedurally appropriate, explaining that the
proper procedure would be for the trial court to hear cross-motions for summary
judgment after the Boateng Parties filed their motion for summary judgment.  Counsel for the Boateng Parties noted that
there had been no hearing on the plaintiffs= motions
for summary judgment, that pending discovery requests for information needed
for the Boateng Parties=
summary-judgment motion had not yet been answered by the plaintiffs, and that
the Boateng Parties still needed to file a response to the plaintiffs= motions
for summary judgment and file a cross-motion for summary judgment of their
own.  

Based on this record, we conclude that the trial
court noticed and conducted a preliminary hearing under Baker v. Goldsmith.  See Baker, 582 S.W.2d at 408B09; Jones
v. Texas Dept. of Protective and Regulatory Servs., 85 S.W.3d 483, 488B89 (Tex.
App.CAustin
2002, pet. denied) (holding that record revealed hearing in trial court was a
Baker hearing rather than trial on the merits of the petition for bill of
review, despite confusion among the parties as to the nature of the
hearing).  

B.        Did the Boateng Parties preserve error as to their appellate
challenge to the trial court=s ruling on the merits of
the petitions for bill of review following the Baker hearing?

TrailBlazer asserts that the Boateng Parties did
not preserve error in the trial court on their sole issue on appeal for the
following reasons: 

(1)       The trial court stated at the beginning of the hearing that it
wanted to consider the issue of whether the garnishment judgment was void for
lack of subject matter jurisdiction, and the Boateng Parties did not object to
the court=s consideration of this
issue.

(2)       The Boateng Parties admitted in their bench brief during the
hearing that the trial court had properly used its inherent powers and Texas
Rule of Civil Procedure 166 to conduct a preliminary evidentiary investigation
into this case.

(3)       The Boateng Parties did not object or move for a continuance
at the outset of the hearing, when Ait was clear@ that the trial court
intended to proceed with a trial on the merits rather than hold a preliminary
hearing.








(4)       The Boateng Parties
voluntarily participated in the hearing after the trial court announced its
intention to address the issue of whether the garnishment judgment was void for
lack of subject matter jurisdiction, and they filed a bench brief on this
issue, thus waiving any procedural error.

On appeal, TrailBlazer emphasizes its collateral
attack on the garnishment judgment; however, TrailBlazer and the United States
also sought bill-of-review relief based on the traditional requirements needed
for a direct attack.  If, as the record
shows, the trial court noticed and conducted a Baker hearing, then a
legitimate issue at this hearing was TrailBlazer=s
assertion that the garnishment judgment was void for lack of subject matter
jurisdiction based on sovereign immunity, which was the main meritorious
defense asserted in this direct attack. 
Therefore, TrailBlazer=s first
argument regarding preservation of error fails because consideration of this
issue at the hearing was consistent with holding a Baker hearing, so
there was no need for the Boateng Parties to object.

As to TrailBlazer=s second
argument, the Boateng Parties= bench
brief is consistent with a Baker hearing and does not waive error.  Although the bench brief does contain a
discussion of the second and third elements for a direct attack, the trial
court allowed the parties to go into these issues at the hearing, and no party
objected.  The main issue addressed at
the hearing was TrailBlazer=s claimed
entitlement to immunity in the garnishment action.  The fact that a preliminary Baker
hearing at times addresses irrelevant issues does not convert this preliminary
hearing into a trial on the merits. 
Further, the Boateng Parties= bench
brief states that the hearing is preliminary and that the proper procedure to
address the merits following the hearing would be to hear cross-motions for
summary judgment.  Therefore, this bench
brief does not waive the Boateng Parties= issue on
appeal.








TrailBlazer also asserts that the Boateng Parties
did not preserve error under the Lemons case because they did not object
or move for a continuance once Ait was
clear@ that the
trial court intended to proceed with trial. 
See Lemons v. EMW Mfg. Co., 747 S.W.2d 372,  372B73 (Tex.
1988).  In Lemons, the Texas
Supreme Court determined that the trial court had conducted a trial on the
merits in the bill-of-review proceeding rather than a Baker hearing.  See id.  The Lemons court further held that the
appellant in the court of appeals did not preserve error as to the trial court=s
changing of the Baker hearing into a trial on the merits because the
appellant did not object or move for a continuance once it became clear that
the trial court intended to conduct a trial. 
See id.  We conclude that
the Boateng Parties have preserved error. 
The record in this case shows that, unlike the facts in Lemons,
the trial court conducted a Baker hearing rather than a trial on the
merits.  Furthermore, unlike the facts in
Lemons, it did not become clear that the trial court intended to rule on
the merits until the day after the hearing ended, when the trial court signed
its final judgment.  Once the trial
court, by its judgment, made it clear that the court was retroactively
converting the Baker hearing into a trial on the merits, the Boateng
Parties timely preserved error on their appellate issue in their motion for new
trial, which the trial court denied after a hearing.  See id.








We disagree with TrailBlazer=s
assertion that the trial court clearly stated at the beginning of the hearing
that it was about to conduct a trial on the merits of the petitions for bill of
review.  We also disagree that the trial
court made this clear during its final comments at the end of the hearing.  Although the trial court did informally
indicate that it was thinking of ruling on the merits of the petitions for bill
of review without any further procedure, counsel for the Boateng Parties
promptly stated that taking such action would not be procedurally proper and
that, to reach the merits, the court should hear cross-motions for summary
judgment.  TrailBlazer makes much of the
fact that the Boateng Parties did not formally object and obtain a ruling as to
these comments of the trial court; however, they did not need to do so because
the trial court only stated a possibility that it was contemplating.  The trial court did not formally give notice
or unequivocally state an intention to rule on the merits, contrary to the
purposes of the Baker hearing. 
This is another key factual distinction from the Lemons case, in
which the trial court ruled on the merits at the conclusion of the hearing,
with no objection from the appealing party. 
See EMW Mfg. Co. v. Lemons, 741 S.W.2d 212, 215 (Tex. App.CFort
Worth 1987), rev=d, 747
S.W.2d 372 (Tex. 1988).  Further, the
Boateng Parties did not waive error by participating in a proceeding that the
court later characterized as a trial on the merits because the trial court did
not make it clear that it would rule on the merits until it did so the day after
the hearing, when the parties were not present. 
We conclude that under the legal standard set forth in Lemons,
the Boateng Parties preserved error as to their appellate issue.

C.        Did the trial court err in ruling on the merits of the
petitions for bill of review following its Baker hearing?

The trial court had discretion to entertain
cross-motions for summary judgment before conducting a Baker hearing.  See Ortmann, 999 S.W.2d at 87B88.  The trial court, however, chose to notice and
conduct a Baker hearing.  See
Baker, 582 S.W.2d at 408B09.  The trial court conducts such a hearing
solely to determine whether the plaintiffs have presented prima facie proof of
a meritorious defense.  See Baker,
582 S.W.2d at 408B09; Jones,
85 S.W.3d 493.  In making this
determination, the trial court examines (1) whether the
plaintiffs= defense or
defenses are barred as a matter of law, and (2) whether the plaintiffs will be
entitled to judgment on retrial if no evidence to the contrary is offered.  See Baker, 582 S.W.2d at 408B09. 








After stating at the close of the hearing its conclusion
that the plaintiffs had shown a meritorious defense and without any notice of a
trial on the merits, the trial court signed an order granting the plaintiffs
relief on the merits.[4] The trial court erred in doing so because, after determining that
the plaintiffs had presented prima facie proof of a meritorious defense, the
trial court should have proceeded with discovery and trial (whether by summary
judgment or by a trial of the fact issues) regarding the merits of the
bill-of-review petition.  See Beck v.
Beck, 771 S.W.2d 141, 142 (Tex. 1989) (holding court of appeals erroneously
converted the trial court=s Baker hearing into a summary-judgment hearing by
affirming trial court=s dismissal following Baker hearing based on appellate
court=s conclusion that
bill-of-review plaintiff was negligent); Baker, 582 S.W.2d at 408B09 (stating that only
issue at Baker hearing is whether plaintiff has presented prima facie
proof of a meritorious defense); Jones, 85 S.W.3d at 493B95 (holding that only
question before trial court in Baker hearing is whether  plaintiff has presented prima facie proof of
a meritorious defense and that plaintiff=s diligence and the merits of the petition for bill of review are
not at issue). 








Due process requires that a party
receive Areasonable notice@ of trial.  See Peralta v. Heights Med. Ctr., Inc.,
485 U.S. 80, 84, 108 S. Ct. 896, 899, 99 L. Ed. 2d 75 (1988).  In addition to showing that the trial court
failed to follow proper bill-of-review procedures, the Boateng Parties also
have affirmatively shown that the trial court ruled on the merits of the
bill-of-review petitions with no notice that it would hold a trial on November
5 and 17, 2003. Although the record reflects that the parties had notice and an
opportunity to be heard as to a preliminary Baker hearing, the record
does not show that the parties received notice and an opportunity to be heard
as to a trial on the merits.[5]  And though the record shows that the trial
court conscientiously endeavored to follow and apply the complexities of
bill-of-review procedure, we nevertheless conclude that the trial court erred
by converting the Baker hearing to a trial on the merits after the
hearing had ended.  This error deprived
the Boateng Parties of due process because they received no notice of trial and
no opportunity to be heard at what later became, by the court=s declaration, the
trial on the merits.  See Mocega v.
Bradford Urquhart M.D., 79 S.W.3d 61, 64B65 (Tex. App.CHouston [14th Dist.] 2002, pet. denied) (reversing dismissal of
medical malpractice action because trial court did not give notice of hearing
on motion to dismiss); Green v. McAdams, 857 S.W.2d 816, 819 (Tex. App.CHouston [1st Dist.]
1993, no writ) (holding trial court erred in rendering post-answer default
judgment after party failed to appear at trial because trial court gave
defaulting party no notice of trial setting); Seckers v. Ocean Chems., Inc.,
845 S.W.2d 317, 318B319 (Tex. App.CHouston [1st Dist.] 1992, no writ) (holding trial court erred in
dismissing case as a discovery sanction because trial court gave no notice of
sanctions hearing to the sanctioned party); Palmer v. Cantrell, 747
S.W.2d 39, 41 (Tex. App.CHouston [1st Dist.] 1988, no writ) (same as Seckers).








In response to the Boateng Parties= argument that the
trial court erred in converting the preliminary hearing into a final trial on
the bill of review, after the fact and without proper notice, TrailBlazer
argues, and our dissenting colleague agrees, that the trial court=s judgment on
jurisdictional grounds did not require any notice, hearing, or trial.  TrailBlazer and our dissenting colleague
assert that, even if the trial court gave no notice or opportunity to be heard
on the merits of the bill-of-review proceeding, this action was not error
because the trial court may dismiss a case over which it lacks jurisdiction at
any time and without notice and opportunity to be heard on the jurisdictional
issue.  In support of this argument,
TrailBlazer and our dissenting colleague cite various cases for the proposition
that a court should dismiss sua sponte cases over which it determines
that it lacks subject matter jurisdiction. 
In those cases, the trial court lacked subject matter jurisdiction over
the case pending before the court.  The
bill-of-review proceeding that is before this court is an action that is
separate from the case in which the challenged garnishment judgment was
rendered.  See Baker, 582
S.W.2d at 406; Schwartz v. Jefferson, 520 S.W.2d 881, 889 (Tex.
1975).  Accordingly, in the judgment
below, the trial court exercised its equitable jurisdiction in cause number
03-49088 to grant TrailBlazer and the United States equitable relief C the dismissal for
lack of subject matter jurisdiction of the garnishment judgment in cause number
01-05070-A.  The trial court did not
dismiss the bill-of-review action for lack of subject matter jurisdiction.  Therefore, the cases cited by TrailBlazer and
our dissenting colleague are not on point.[6]  The trial court had equitable jurisdiction
over the petitions filed by the United States and TrailBlazer.  Presuming for the sake of argument that the
trial court lacked subject matter jurisdiction in the garnishment action, that
would not allow the trial court to summarily grant the petitions for
bill-of-review relief without giving the Boateng Parties any notice or
opportunity to be heard on the merits. 
The Boateng Parties were judgment creditors under a final Texas judgment
against TrailBlazer, and they had due process rights to notice and an
opportunity to be heard on the merits of the bill-of-review petitions.[7]  The trial court erred in depriving them of
those rights.

D.        Is the trial court=s procedural error
subject to a harm analysis?








TrailBlazer
devotes much of its brief to its argument that, even if the trial court
procedurally erred as alleged by the Boateng Parties, this error was harmless
because, they claim, the trial court=s granting of the relief sought by the plaintiffs was
correct.  This argument presumes that the
error in question is subject to a harm analysis.  TrailBlazer cites no cases holding that a
harm analysis applies to such error.  The
cases we have found hold that this error is not subject to a harm
analysis.  See Beck, 771 S.W.2d at
142 (reversing court of appeals=s erroneous review of the merits of bill-of-review petition on
appeal from trial court=s Baker hearing ruling, without inquiring into whether such
error was harmful);  Jones, 85
S.W.3d at 494 (rejecting appellee=s argument on appeal from Baker hearing dismissal that the
petitions for bill of review failed based on lack of due diligence because that
issue  was not before the trial court in
the Baker hearing); Mocega, 79 S.W.3d at 64B65 (reversing
dismissal of medical malpractice action because trial court did not give notice
of hearing on motion to dismiss, without performing harm analysis); Green,
857 S.W.2d at 819 (reversing for lack of notice of trial, without performing a
harm analysis); Seckers, 845 S.W.2d at 318B319 (reversing death-penalty discovery sanctions for lack of
notice of sanctions hearing, performing no harm analysis, and refusing to hold
that error was harmless on the ground that 
sanctioned party was given hearing as to appropriateness of sanctions
during motion-for-new-trial hearing); Palmer, 747 S.W.2d at 41(same as Seckers).  Because no harm analysis applies, the
arguments of the parties as to the merits of the petitions for bill-of-review
relief are not relevant.[8]  And because the trial court erred in
converting the preliminary Baker hearing into a final trial on the
merits after the fact, we sustain the Boateng Parties= sole issue on
appeal.[9]  We reverse the trial court=s judgment and remand
the case for the trial court to issue a proper Baker hearing order and
for further proceedings in accordance with this opinion.

IV.  Conclusion








The trial court erred in converting the preliminary hearing on a
bill of review into a final trial on the merits after its Baker hearing
and without notice to the parties. 
Because of this procedural error, the trial court also erred in
dismissing the underlying garnishment suit for lack of jurisdiction.  Accordingly, we reverse the trial court=s judgment, reinstate
the garnishment judgment, and remand this case to the trial court for further
proceedings consistent with this opinion.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Majority and Dissenting Opinions filed July
26, 2005.

Panel consists of Justices Anderson, Hudson, and Frost.  (Hudson, J., dissenting.)

 

 











[1]  The United
States and TrailBlazer also sought, at first, attorney=s fees and a declaratory judgment stating that the
default judgment in the garnishment was void for lack of subject matter
jurisdiction based on sovereign immunity. 
However, both parties later withdrew their requests for this relief.





[2]  Rule 245, entitled, AAssignment of Cases for Trial,@ provides that a court may schedule
a trial in contested cases with a reasonable notice of not fewer than
forty-five days unless the parties agree. 
Tex. R. Civ. P. 245. 





[3]  TrailBlazer
adopted by reference the United States=s motion
for summary judgment.





[4]  As a
preliminary matter, we note that we presume the trial court heard a case only
after proper notice to the parties, and the Boateng Parties have the burden to
affirmatively show that they were not given notice that the trial court
intended the hearing as a trial on the merits of the petitions for bill of
review.  See Jones v. Texas Dept. of
Pub. Safety, 803 S.W.2d 760, 761 (Tex. App.CHouston
[14th Dist.] 1991, no writ).  The Boateng
Parties are required to attach competent evidence to their motion for new trial
showing that they had no notice that the hearing would be a trial on the
merits.  See id.  We conclude that the Boateng Parties
satisfied this procedural requirement, by attaching competent evidence to their
motion for new trial showing lack of notice of a trial on the merits.  See id. 





[5]  The record
also shows that the parties did not receive notice and an opportunity to be
heard at a summary-judgment hearing, although this is not relevant because the
trial court did not grant any summary-judgment relief.





[6]  The cases
cited by TrailBlazer and our dissenting colleague state that a court can
summarily dismiss a case pending before it upon determining that the court
lacks subject matter jurisdiction over the pending case.  However, none of these cases state that this
legal principle allows or requires a trial court to summarily grant, without
notice and an opportunity to be heard, an equitable bill of review over which
the court has subject matter jurisdiction, simply because the plaintiffs seek
bill-of-review relief based on an alleged lack of subject matter jurisdiction
in another case.  





[7]  For this reason,
we respectfully disagree with our dissenting colleague=s statement that the Boateng Parties should not have
been surprised when the trial court ruled on the merits of the bills of review.
 See post, op. at p. 4.





[8]  As to the
issue of whether the trial court lacked subject matter jurisdiction in the
garnishment action, we respectfully disagree with our dissenting colleague=s analysis of the facts and the law and his
determination that the trial court lacked subject matter jurisdiction under the
doctrine of sovereign immunity. 
Nonetheless, we do not detail the reasons for that disagreement because
the merits of the trial court=s determination regarding sovereign immunity are not
before us.





[9]  Our dissenting
colleague states that we reverse the trial court=s
judgment because the trial court did not give the Boateng Parties reasonable
notice of its intention to dismiss the garnishment action for lack of subject
matter jurisdiction.  It would be more
accurate to say that we reverse the trial court=s
judgment because the trial court erred in converting the preliminary Baker
hearing into a final trial on the merits after the fact, thus depriving the
Boateng Parties of notice and an opportunity to be heard on the merits of the
bill-of-review petitions.